Paul Mysliwiec
Special Attorney to the
Attorney General, Acting Under
Authority Conferred by 28 U.S.C. § 515
New York Bar No. 4795043
201 Third St. NW, Suite 900
Albuquerque, NM 87102
Telephone:  505-224-1411
Email: Paul.Mysliwiec@usdoj.gov
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff<br><br>　　v.<br><br>Samuel Marian Mattia,<br><br>　　　　　　Defendant. | Case No: 2:20-mj-05106-DMF_____<br><br>**MOTION TO DETAIN** |

　　　　The United States respectfully requests detention of defendant Samuel Marian Mattia ("Defendant") pending trial in this matter, pursuant to 18 U.S.C. § 3142.  The United States submits that no condition or combination of conditions can sufficiently assure this honorable Court of Defendant's appearance at court hearings, or the safety of any person or the community in between court appearances, and respectfully requests a hearing pursuant to § 3142(f)(1)(D), (f)(2)(A), and (f)(2)(B).  The United States further seeks a continuance of that detention hearing pursuant to § 3142(f)(2) until the Pretrial Services office can prepare a standard bail report to advise the parties and the Court.

I. Background and Criminal History[1].

Defendant has a lengthy and violent criminal history, spanning three states, dating back to 1998, not to mention over fifteen known aliases. In 1998, Defendant was found guilty of theft and sentenced to 52 days jail in Maricopa County, Arizona, before having his probation revoked/terminated for noncompliance. He was arrested for vehicle theft, also in Maricopa County, in 2000, but that charge appears to have been dismissed without a conviction. He was convicted of burglary in the third degree, also in 2000, also in Maricopa County, and sentenced to four years of probation, but that probation term was revoked and he received a custodial sentence of 2.5 years. Also in 2000, Defendant was arrested for simple assault with intent to injure in Tempe, Arizona, but that charge was dismissed without a conviction. In 2002, Defendant was arrested for interference with a judicial proceeding, but disposition for that case does not appear in the current FBI records. Defendant was convicted in 2009 in Maricopa County of aggravated assault with a deadly weapon and sentenced to nine years in prison. More recently, Defendant was arrested in 2019 for aggravated assault with serious physical injury, but the disposition of that case is unknown.

Defendant was also convicted of first degree felony assault in Oregon and sent to the Coffee Creek Correctional Facility in 2010. Most recently, in California, Defendant was convicted of a felony domestic violence charge, and it was on that charge that he was in custody

---

[1] The listed Criminal History is derived from the Federal Bureau of Investigation ("FBI")'s search of its databases. It may be incomplete or contain errors. In the experience of the undersigned Special Attorney, Pretrial Services bail reports are more complete and useful to the Court.

until July 6, 2020.[2]  It appears from these records, therefore, that Defendant has at least three felony violent crime convictions, as well as more than one failure to abide by a court's conditions of probation or supervised release.

In the instant case, Defendant threatened to publish pornographic pictures and videos of the victim, M.H., if the victim did not comply with Defendant's demands, then carried out that threat when the victim refused, leading to the current charge of Cyber-Stalking contrary to 18 U.S.C. § 2261A(2)(b).  Defendant also threatened physical harm to the instant victim, claiming to be a "sicairo," or hitman, and asserting that he considered grabbing the steering wheel while the victim was driving to kill them both.  This conduct has understandably quite distressed M.H.

Also importantly, Defendant threatened harm to the victim's family members, who had no voluntary interaction with Defendant at all.  Defendant's threats of harm are plausible and serious, given his documented history of engaging in acts of violence against others, and in part because of his inside information that made him a successful confidential human source ("CHS") for the FBI in at least one murder-for-hire plot.  Because of his work as a CHS, Defendant has non-standard knowledge of the policies and procedures of the FBI, which he leveraged to injure the instant victim effectively when she refused his demands.  Defendant also attempted to injure others beyond M.H. – for instance, Defendant sent text messages to SA Grumbos of the FBI falsely claiming that the instant victim "told me about u and ur wife and gave pictures," implying scandalous content in picture form, though no such scandalous pictures appear to exist.

---

[2] The information about his local California charge comes from conversations with local Sacramento Domestic Violence bureau prosecutors.  The Pretrial Services bail report should contain the exact statute of conviction and terms of the sentence.

While in state custody for the recent Sacramento domestic violence case, on February 27, 2020, Defendant called the local FBI to report that he had access to confidential counter-terrorism databases through the instant victim, and that he had downloaded information from those restricted databases.  His goal in making this disclosure was to demand the FBI get him out of trouble for his Sacramento domestic violence behavior.  The FBI diligently investigated his claims, and also his claims of access to FBI weaponry, phones, and other devices, and found zero evidence to corroborate them.

The FBI also diligently investigated Defendant's contemporaneous claims that the instant victim was trying to fabricate charges against her husband, as well as to fabricate evidence in murder-for-hire cases, and found absolutely no evidence to substantiate those claims.  Again, it appeared that Defendant was using his genuine involvement in serious crime, and his knowledge of FBI procedures, to leverage some benefit related to his then-pending Sacramento domestic violence charges.

When confronted about the conduct leading to the instant criminal complaint, Defendant consented to speak with FBI agents and made wild accusations to attempt to deflect attention from himself.  On March 11, 2020, Defendant spoke to Special Agents of the FBI, and admitted that he sent pictures of M.H. to get her fired.  In that same consensual interview, Defendant told an ever-changing story about M.H. calling him on behalf of a murder-for-hire defendant.  The FBI later investigated and found no evidence substantiating that claim, either.

II.     Legal Standards.

 "If, after a hearing… the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judidicial officer shall order the detention of the person

before trial." 18 U.S.C. § 3142(e)(1). The United States may request such a hearing if the case invovles any felony if the defendant has been convicted of two or more crimes of violence, § 3142(f)(1)(D), if the case involves a serious risk that the defendnat will flee, § 3142(f)(2)(A), or if there is a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, intimidate, or attempt to threaten, injure, or intimidate a prospective witness, § 3142(f)(2)(B).

At such a detention hearing, the court shall, in determining whether conditions of release exist that can reasonably assure the appearance of the defendant as required and protect all people and the community, consider the following factors: 1) the nature and circumstances of the offense charged, 2) the weight of the evidence, 3) the history and characteristics of the defendant, and 4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

Section 3142(i) also allows for release "for another compelling reason." The undersigned has found no cases published by the United States Court of Appeals for the Ninth Circuit examining requests for pretrial release related to the COVID-19 pandemic on the merits. But Chief District Judge Mueller of the Eastern District of California (where Defendant is currently set to appear for his initial appearance) has published an opinion that provides a framework for assessment of such release requests. *United States v. Phillips*, 19-CR-0081-KJM, 2020 U.S. Dist. LEXIS 76528 (E.D.C.A. April 30, 2020). In that case, Nancy Phillips pointed both to her medical condition(s) and the heightened difficulty in communicating with defense counsel to prepare her trial defense to support her request for pretrial release. *Id*. at \*9-10. After noting that the defendant "bears the burden of establishing circumstances warranting temporary release pending trial," Chief Judge Mueller noted that a serious medical condition may "qualify as a

- 5 -

compelling reason warranting release," but that "chronic conditions that can be managed in prison are not a sufficient basis… notwithstanding the seriousness of the COVID-19 pandemic." *Id*. at 9-11 (internal citations omitted).  Chief Judge Mueller determined that the 59-year-old defendant who required surgery in the near future, but who made no claim of denial of medical treatment, had not presented a compelling reason for pretrial release.  *Id*. at 11-12.  The court also determined that, while it was sympathetic to the challenges of trial preparation during COVID-19-related restrictions, defense counsel had not argued that his ability to represent Ms. Phillips was "completely impeded," so had "not met her burden of demonstrating a compelling reason [that] necessitates her release under 18 U.S.C. § 3142(i)."  *Id*. at 12-13.

III.     Analysis.

Defendant is both a danger to M.H., her family, and the community, and a flight risk, given the serious penalties he faces and his history of violating court-imposed conditions.

The evidence of Defendant's danger to the community is clear and convincing.  In addition to his threats to harm the instant victim by publishing and distributing pornographic images and videos of her without her consent, and indeed distributing them when she did not acquiesce to his demands, Defendant threatened physical harm by describing himself as a sicairo and revealing his contemplation of murder-suicide.  Also importantly, Defendant has threatened harm against M.H.'s family members, including but not limited to attempted harm to M.H.'s husband's career and implied threats to her children.  Combined with his violent criminal history, these threats from Defendant should be taken extremely seriously.  The current felony charge, combined with Defendant's violent criminal history, establishes qualification for a detention hearing pursuant to § 3142(f)(1)(D), and Defendant's torment of M.H. qualifies as an attempt to intimidate a prospective witness within the meaning of § 3142(f)(2)(B).

Preponderant evidence exists that Defendant presents an unacceptable risk of non-appearance if he is released. As revealed by his call to the FBI in February of 2020, and his interview with Special Agents in March of 2020, as well as his publication of his interactions with the FBI as revealed in reporting by the Phoenix New Times, Defendant's approach so far has been to attempt to lie his way out of federal trouble by accusing others of wrongdoing. Now that the instant federal charges reveal that the United States is nevertheless pursing a federal felony charge against him, he has a new incentive to flee his court appearances. Additionally, the United States' preliminary calculations put Defendant at a presumptive advisory Guidelines range of 57-60 months,[3] a very significant sentence that provides strong incentive to fail to appear for court. Finally, Defendant's criminal history shows a consistent demonstrated history of failing to abide by court-set conditions. Taken together, these facts and circumstances present an unacceptable failure-to-appear risk, which meets the requirements for a detention review pursuant to § 3142(f)(2)(A).

Turning to the § 3142(g) factors, 1) the offense charged is Cyber-Stalking, and the circumstances are quite aggravating, as described in the criminal complaint and the preliminary Guidelines calculations, 2) the weight of the evidence is overwhelming, including Defendant's confession that he used the internet to share private images and videos of M.H. in order to get her fired, 3) the history and characteristics of Defendant include his extremely serious violent criminal history and failures to abide by court restrictions, as described above, and 4) the nature

---

[3] The United States arrived at this estimated offense level using the following Sentencing Guideline provisions: base 18 from U.S.S.G. § 2A6.2, +2 for pattern of activity pursuant to § 2A6.2(b)(1), +6 for official victim of an offense against the person pursuant to § 3A1.2(b) and a criminal history category of III, for a presumptive advisory Guidelines range of 57-71 months (reduced to 57-60 by operation of law on the current charge).

and seriousness of the danger Defendant represents is both irrevocable and humiliating to the instant victim, and potentially violent to her and her family members. Defendant has threatened harm, and delivered on those threats so far.

With respect to other potential compelling reasons for release, specifically related to the novel Coronavirus, Defendant has not asserted any reason he is at heightened risk. He was born in September of 1980, and therefore is presently under 40 years old, and has no serious health conditions of which the United States is aware. Nor has he claimed any difficulty in conferring with defense counsel. Unless and until he presents reasons more compelling than those presented by Nancy Phillips, his release on § 3142(i) grounds is simply not indicated. *Phillips*, *12-13.

IV.     Conclusion.

The United States respectfully requests that this Court continue any detention hearing until the Pretrial Services office can produce a bail report, and then detain Defendant pending trial after the parties have had a full and fair opportunity to present argument. At the time of this filing, Defendant has not yet been assigned defense counsel, but its public filing will make it available for the United States Attorney's Office in Sacramento to provide to Defendant at his initial appearance, presently scheduled for the afternoon of July 7, 2020.

    Respectfully submitted,

    *Electronically filed July 7, 2020*
    PAUL J. MYSLIWIEC
    Special Attorney to the Attorney General
    Acting Under Authority Conferred by
    28 U.S.C. § 515
    P.O. Box 607
    Albuquerque, New Mexico  87103
    (505) 346-7274